IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIEU DONNE UMBA BOKOLE
(A# 209-983-110),

              Petitioner,

v.                                          1:18-cv-00583-JB-LF

KEVIN K. McALEENAN,[1] in his official capacity
as Acting Secretary of the U.S. Department of
Homeland Security; WILLIAM P. BARR,[2] in his
official capacity as Attorney General of the United
States; WILLIAM P. JOYCE, in his official
capacity as Acting Field Office Director, El Paso
Field Office, U.S. Immigration and Customs
Enforcement; DIANE L. WITTE, in her official
capacity as Deputy Field Office Director, El Paso
Field Office, U.S. Immigration and Customs
Enforcement; and WILLIAM JEPSEN, in his
official capacity as Assistant Field Office Director,
Albuquerque Sub-Field Office under the El Paso
Field Office, U.S. Immigration and Customs
Enforcement; BRIAN KOEHN, in his official
capacity as Warden of the Cibola County
Correctional Center,

              Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Respondents Kevin K. McAleenan, William

P. Barr, William P. Joyce, Diane L. Witte, William Jepsen, and Brian Koehn's (collectively

"respondents" or the "government") Motion to Dismiss Petition for Writ of Habeas Corpus for

Lack of Jurisdiction, filed December 26, 2018. Doc. 11. Petitioner Dieu Donne Umba Bokole

---

[1] Kevin K. McAleenan began serving as Acting Secretary of Homeland Security on April 10, 2019, and is automatically substituted for Kirstjen M. Nielsen as a party. FED. R. CIV. P. 25(d).

[2] William P. Barr began serving as Attorney General on February 14, 2019, and is automatically substituted for Jefferson Beauregard Sessions III, as a party. FED. R. CIV. P. 25(d).

filed his Response in Opposition to the Government's Motion to Dismiss on January 21, 2019. Doc. 16. Respondents filed their Reply to Petitioner's Response in Opposition the Government's Motion to Dismiss on February 4, 2019. Doc. 18. On March 11, 2019, Mr. Bokole filed a Notice about the Status of Petitioner Bokole's Immigration Proceedings. Doc. 19. The government filed a response to the notice on March 25, 2019. Doc. 21. Mr. Bokole filed a reply in support of his notice on April 1, 2019, along with supporting exhibits on April 2, 2019. Docs. 22, 23. The Court set a hearing on the government's motion to dismiss and heard the argument of counsel on April 5, 2019. Docs. 20, 24.

Having read the submissions of the parties and the relevant case law, and having heard the argument of counsel, I find that the government's motion is well-taken, and I recommend that the Court GRANT it.

## I. **Background Facts**

Mr. Bokole is a citizen of the Democratic Republic of Congo ("DRC"). Doc. 11-1 at 2. On June 13, 2017, Mr. Bokole presented himself at a United States port of entry in El Paso, Texas, without valid entry documents and asked for asylum. Doc. 1 at 6; Doc. 11 at 2; Doc. 16 at 3. The U.S. Customs and Border Protection ("CBP") detained Mr. Bokole the same day.[3] Doc. 11-1 at 2; Doc. 16 at 3. Because Mr. Bokole did not have valid entry documents, CBP processed him for expedited removal pursuant to 8 U.S.C. §1182(a)(7)(A)(ii). Doc. 11-1 at 2. Mr. Bokole expressed a fear of returning to the DRC, and CBP referred him for a credible fear interview. Doc. 11-1 at 2; Doc. 16 at 3. On July 3, 2017, an asylum officer conducted a credible

---

[3] Mr. Bokole was transferred to the Cibola County Correctional Center in Milan, New Mexico on June 19, 2017. Doc. 11-1 at 2. He remained there until September 26, 2018, *see id.* at 3, and he was there when he filed his petition in this Court in June 2018. *See* Doc. 1 at 1.

fear interview.  Doc. 11-1 at 2.  Although the U.S. Citizenship and Immigration Services ("USCIS") issued a positive credible fear determination, Doc. 11-2 at 1, an immigration judge issued a written decision in March 2018[4] denying all relief, and he ordered Mr. Bokole removed to the DRC.  Doc. 11-1 at 2−3; Doc. 11-3.  Mr. Bokole filed an appeal with the Board of Immigration Appeals ("BIA").  Doc. 11-1 at 3.  On September 20, 2018, the BIA affirmed the immigration judge's decision, and the order of removal became administratively final.  Doc. 11-1 at 3; Doc. 11-6 at 4−7.  Mr. Bokole did not file a petition for review with the Tenth Circuit Court of Appeals at that time.  Doc. 11-1 at 3.

In late September 2018, Mr. Bokole was transferred to a detention facility in Texas to effectuate the removal order.[5]  Doc. 11-1 at 3.  Although Mr. Bokole has been ordered removed, he has refused to complete the documentation necessary to effectuate the removal order.  *Id*. at 3, 4.  On November 2, 2018, Mr. Bokole filed a motion with the BIA requesting that it reissue its decision to allow him to file a timely petition for review with the Tenth Circuit.  *Id*. at 4.  On February 27, 2019, the BIA rescinded and reissued its September 20, 2018 decision denying Mr. Bokole relief.  Doc. 19 at 2; Doc. 19-1 at 2–6.  The BIA's reissuance of its decision and final order of removal allowed Mr. Bokole to petition the Tenth Circuit Court of Appeals for review of the BIA's final decision.  Doc. 19 at 2.  On March 27, 2019, Mr. Bokole filed an appeal with the Tenth Circuit.  Doc. 22 at 2; *see also Bokole Umba v. Barr*, Tenth Cir. No. 19-9513, Petition for Review filed 3/27/2019.  Mr. Bokole also filed an emergency motion for stay of removal,

---

[4] The government states that the immigration judge issued his decision on March 22, 2018; the decision itself is dated March 23, 2018, on the first page, and March 22, 2018, on the last page. *See* Doc. 11-3 at 2, 17.

[5] This Court retains jurisdiction over Mr. Bokole's habeas petition because he was in custody in New Mexico when he filed the petition.  *See Santillanes v. U.S. Parole Com'n*, 754 F.2d 887, 889 (10th Cir. 1987) ("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change").

which the Tenth Circuit denied on April 1, 2019. *See Bokole Umba v. Barr*, Tenth Cir. No. 19-9513, Emergency Motion filed 3/27/2019, Order filed 4/1/2019.

Mr. Bokole has been detained by the government since June 13, 2017. Less than a month after Mr. Bokole filed his petition in this case, he asked the Court to stay the proceedings so that he could pursue release through parole. Doc. 5. That stay was in effect until November 30, 2018. Doc. 9. During that time, Mr. Bokole twice sought release through parole. Doc. 7 at 2; *see also* Docs. 11-4, 11-5. On August 9, 2018, U.S. Immigration and Customs Enforcement ("ICE") denied parole because Mr. Bokole had "not established to ICE's satisfaction that [he was] not a flight risk," or a "danger to the community or U.S. Security." Doc. 11-4. ICE further determined that "[a]dditional exceptional, overriding factors (e.g., law enforcement interests or potential foreign policy consequences) in [his] case militate against parole," in that Mr. Bokole "was arrested by the police in his country for demonstrating against the government and escape[d] from detention."[6] *Id.* at 2. Within a week of ICE's denial of parole, Mr. Bokole requested "parole re-determination," but ICE denied the request shortly thereafter for the same reasons given in its original denial. Doc. 11-1 at 3; Doc. 11-5. ICE also noted that it "previously had provided [Mr. Bokole] with a written decision declining to grant parole, and [he had] failed to provide additional documentation or to demonstrate any significant changed circumstances which would alter ICE's previous determination." Doc. 11-5 at 2.

When it lifted the stay, the Court ordered the government to answer Mr. Bokole's petition. Doc. 9 at 2. Instead of doing so, and because Mr. Bokole's status had changed since he filed his petition, the government filed a motion to dismiss his petition. *See* Doc. 11 at 1−2.

---

[6] The Court recognizes that this is part of the reason Mr. Bokole claims he has a well-founded fear of persecution if he is returned to the DRC. *See* Doc. 1 at 5−6. The Court is merely reporting ICE's decision.

When Mr. Bokole originally filed his petition in this case, he was in pre-removal proceedings and was not subject to a final order of removal. By the time the stay was lifted, he was subject to a final order of removal. *See* Doc. 11 at 2; Doc. 11-1 at 3. This is the basis for the government's motion.

## II. <u>Discussion</u>

The government moves the Court to dismiss Mr. Bokole's petition for lack of jurisdiction, which is governed by FED. R. CIV. P. 12(b)(1). It argues that "[w]ith the issuance of Bokole's final order of removal on September 20, 2018, [(and subsequent reissuance on February 27, 2019),] the Government's authority to detain Bokole shifted from 8 U.S.C. § 1225(b)(1), which governed his detention during the consideration of his asylum application, to 8 U.S.C. § 1231(a), which governs his detention now that a final order of removal has issued." Doc. 11 at 2. Thus, according to the government, Mr. Bokole's challenge to his detention under 8 U.S.C. § 1225(b)(1) is moot, and his challenge to his detention under 8 U.S.C. § 1231(a) is not yet ripe for review. *Id.* Mr. Bokole does not directly address the government's jurisdictional arguments. *See generally* Doc. 16. Instead, he argues that his petition states a plausible claim for relief[7] because consideration of the entire time that Mr. Bokole has been in custody without a "custody hearing before a neutral arbiter" compels the conclusion that his continued detention

---

[7] Mr. Bokole attempts to reframe the government's motion into a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6). *See* Doc. 16 at 7−8 & nn. 23, 24. The government's motion, however, challenges the Court's jurisdiction based on mootness and ripeness, not on whether Mr. Bokole states a plausible claim for relief. The jurisdictional question is independent of the statutes on which Mr. Bokole's claims are based. *See* Doc. 1 ¶ 7 (citing statutes, including 28 U.S.C. § 2241, on which claim is based). Because the government's motion is not a mere facial challenge to the complaint, but instead is based on the independent jurisdictional questions of mootness and ripeness, the Court is not required to convert the motion into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

has deprived him of his procedural due process rights under the Fifth Amendment. *See id.* at 1−2. Mr. Bokole further argues that his continued detention without a "custody hearing before a neutral arbiter" violates the Eighth Amendment's prohibition of excessive bail. *See id.* at 2. For the following reasons, I agree with the government and recommend that the Court dismiss Mr. Bokole's petition for lack of subject-matter jurisdiction.

### A. Mootness

Under Article III of the Constitution, federal courts may only adjudicate live controversies. *Alvarez v. Smith*, 558 U.S. 87, 92 (2009). An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* (internal quotation marks and citations omitted). "If, during the pendency of the case, circumstances change such that a party's legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required." *Green v. Haskell Cnty. Bd. of Comm'rs*, 568 F.3d 784, 794 (10th Cir. 2009).

Mr. Bokole filed his habeas petition while he was in pre-removal proceedings and before he was subject to a final order of removal. During that time, he was detained under 8 U.S.C. § 1225(b)(1)(B)(ii). Section 1225(b)(1)(A) governs the screening of individuals who arrive in the United States but are found inadmissible because of, among other things, a lack of valid documentation. *See* 8 U.S.C. §§ 1182(a)(7) (documentation requirements), 1225(b)(1)(A)(i) (referring to aliens who are inadmissible under § 1182(a)(7)). There is no dispute that Mr. Bokole entered the United States without valid documentation.

An individual who falls within the scope of § 1225(b)(1), but who indicates an intent to apply for asylum or a fear of persecution in his or her home country, is referred to an asylum officer for a preliminary screening known as a "credible fear interview." 8 U.S.C. § 1225(b)(1)(A)(ii). If an asylum officer determines that an individual establishes a credible fear

of persecution, "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). "Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). The Attorney General may exercise his discretion to temporarily release an individual detained pursuant to § 1225(b)(1) on parole if the individual meets certain conditions. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 324 (D.D.C. 2018). But the Attorney General's discretionary parole authority is permissive and does not create a statutory right to a bond hearing. *Jennings*, 138 S. Ct. at 842.

Upon entry of a final removal order, however, the matter enters the "removal period," and the statutory authority for detention shifts to 8 U.S.C. § 1231. Section 1231 defines the removal period as beginning on the latest of: (i) the date the removal order becomes administratively final;[8] (ii) if the removal order is judicially reviewed and the court orders a stay of removal, the date of the court's final order; or (iii) the date an alien is released from detention if that detention is not under an immigration process. 8 U.S.C. § 1231(a)(1)(B).

Here, the first clause of § 1231(a)(1)(B) applies.[9] Consequently, the removal period for Mr. Bokole began on February 27, 2019, when the BIA reissued its September 20, 2018 removal order and the order became administratively final.[10] On February 27, 2019, the government's

---

[8] An order of removal becomes administratively final upon "a determination by the BIA affirming such order." 8 U.S.C. § 1101(a)(47)(B)(i).

[9] The second clause does not apply because it requires the alien to file a petition for review of the removal order, and the reviewing court must order a stay of the alien's removal. 8 U.S.C. § 1231(a)(1)(B)(ii). As noted above, although Mr. Bokole filed a petition in the Tenth Circuit for review of the BIA's decision, the Tenth Circuit denied Mr. Bokole's motion for a stay of removal. Thus, the two requirements of the second clause have not been met. The third clause does not apply because Mr. Bokole is not in custody on a non-immigration matter.

[10] Where the BIA reissues a decision, the order of removal becomes final on the reissue date. *See Lewis v. Gonzales*, 481 F.3d 125, 129 (2d Cir. 2007).

authority to detain Mr. Bokole shifted from 8 U.S.C. § 1225(b)(1)(B)(ii) to § 1231(a)(2). Thus, Mr. Bokole's claim challenging his detention under 8 U.S.C. § 1225(b)(1)(B)(ii) is moot. *See, e.g.*, *De la Teja v. United States*, 321 F.3d 1357, 1362–64 (11th Cir. 2003) (alien's habeas petition challenging detention under 8 U.S.C. § 1226 is moot when removal period starts and detention authority shifts to 8 U.S.C. § 1231); *Ufele v. Holder*, 473 F. App'x 144, 146 (3d Cir. 2012) (stating that when BIA's order became administratively final, petitioner's detention switched from § 1226 to § 1231, thereby rendering moot his claim challenging the lawfulness of his detention under § 1226); *Oyelude v. Chertoff*, 170 F. App'x 366, 368 (5th Cir. 2006) ("Oyelude's challenge to his § 1226 detention was mooted on June 23, 2004 when his final removal order was entered and the Attorney General's authority to detain him shifted to § 1231.").

In short, there is no remedy the Court could provide concerning the legality of Mr. Bokole's detention during the pre-removal period. *See Spencer v. Kemna*, 523 U.S. 1, 18 (1998) ("[M]ootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so."). Accordingly, the Court lacks jurisdiction over Mr. Bokole's claim challenging the legality of his detention prior to February 27, 2019.

### B. Ripeness

Ripeness is a justiciability doctrine "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The ripeness inquiry "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004). In

other words, the Court must determine "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006). This Court only has subject matter jurisdiction over cases that raise issues that are ripe for review. *Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d 1244, 1249 (10th Cir. 2001). "The plaintiff bears the burden of providing evidence to establish that the issues are ripe." *Id.*

Generally, "determinations of ripeness are guided by a two-factor test, requiring us to evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (internal quotations and citations omitted). "The central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* Like other challenges to a court's subject matter jurisdiction, the question of ripeness is treated as a motion under Rule 12(b)(1). *Id.*

Mr. Bokole claims that he is entitled to a custody hearing immediately. *See* Doc. 16 at 13. However, after an order of removal becomes administratively final, the Attorney General "shall detain the alien" during the 90-day removal period established under 8 U.S.C. § 1231(a)(2). *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001); *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). Generally, the government is required to remove the alien held in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A). While the government may detain an inadmissible alien beyond the statutory removal period, *see id.* § 1231(a)(6), the government may not detain such an alien indefinitely. *Zadvydas*, 533 U.S. at 699. Instead, the detention of an alien subject to a final order of removal for up to six months is presumptively reasonable in view of the time required to accomplish removal. *Id.* at 701.

Beyond that period, if the alien shows that there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Furthermore, as the period of detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The six-month presumption does not mean that every alien must be released after that time, but rather an alien may be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Under 8 U.S.C. § 1231(a)(2) and *Zadvydas*, Mr. Bokole's detention until May 28, 2019—the end of the 90-day removal period—is required by statute and does not trigger constitutional concerns. *See Zadvydas*, 533 U.S. at 701. Another three-month period after May 28, 2019 is presumptively reasonable and also does not trigger constitutional concerns. *See id.*; *see also, e.g., Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) (district court did not err in finding that petitioner's challenge to his continued post-removal detention was premature where petitioner had not been in post-removal order detention longer than the presumptively reasonable six-month period set forth in *Zadvydas*); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051–52 (11th Cir. 2002) (same). Because Mr. Bokole may be removed from the United States during this presumptively reasonable six-month period, Mr. Bokole's claim challenging the constitutionality of his current detention under 8 U.S.C. § 1231(a) is premature, and the Court is without jurisdiction to consider it. If necessary, Mr. Bokole may file a new petition after expiration of the six-month period.

C. Mr. Bokole's Constitutional Arguments

An application for habeas corpus pursuant to 28 U.S.C. § 2241 may be granted only if the petitioner "is in custody in violation of the Constitution, or laws or treaties of the United States."

28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (district court properly exercised jurisdiction over alien's habeas petition challenging his continued detention without bond or a bond hearing); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas." (citing *Zadvydas*, 533 U.S. at 687–88)). Importantly, however, the Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Kim*, 538 U.S. at 522.

Here, Mr. Bokole argues that because of the overall length of his detention (nearly 23 months since June 13, 2017), section 1231(a), as applied to him, is unconstitutional without granting him a custody hearing. *See* Doc. 16 at 7−13; Doc. 25 at 32−33. Although the Court is not unsympathetic to Mr. Bokole's plight, the Supreme Court to date has found a constitutional problem only with potentially *indefinite* detention. *See Zadvydas*, 533 U.S. at 696 ("we believe that an alien's liberty interest is . . . strong enough to raise a serious question as to whether . . . the Constitution permits detention that is indefinite and potentially permanent"); *see also Clark v. Martinez*, 543 U.S. 371, 378−87 (2005) (holding that inadmissible aliens who could not be removed from the United States for the foreseeable future could not be detained indefinitely); *cf. Mwangi v. Terry*, 465 F. App'x 784, 787−88 (10th Cir. 2012) (alien's more-than-two-year detention pending a decision on whether he would be removed was not indefinite and did not raise the constitutional problem at issue in *Zadvydas*).

Furthermore, Mr. Bokole has raised a procedural due process challenge, but he has not addressed in any way the administrative process he received when he twice was considered and

rejected for release under the parole procedures required by *Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018). *See* Doc. 16; *see also* Doc. 5 (requesting stay of proceedings while Mr. Bokole sought relief under *Damus*); Docs. 11-4, 11-5 (orders denying Mr. Bokole parole). He also has not addressed—nor could he because his claim is not ripe—the process he will receive if the government is not able to remove him during the removal period. *See* 8 C.F.R. § 241.4 (procedures for determining "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period"); *see also Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1251−56 (10th Cir. 2008) (holding that regulation implementing statute authorizing Attorney General to detain certain classes of aliens beyond 90-day removal period comported with due process).

Thus, although Mr. Bokole may be able to establish a liberty interest in being free from continued detention, it's not obvious that the only acceptable procedure to protect that interest is a custody hearing before either an immigration judge or this Court. As the Supreme Court has explained, "the requirements of due process are 'flexible and call[] for such procedural protections as the particular situation demands.'" *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Supreme Court has "declined to establish rigid rules and instead ha[s] embraced a framework to evaluate the sufficiency of particular procedures." *Id.*; *see also Morrissey*, 408 U.S. at 481 ("Once it is determined that due process applies, the question remains what process is due."). Because Mr. Bokole has made no effort to address the procedural protections that he received when he applied for parole or the protections that he will receive if the government cannot remove him within the removal period, the Court cannot evaluate the sufficiency of that process.

At this point, Mr. Bokole's removal order is administratively final, and there is no reason to believe that he will not be removed from the United States within the presumptively

reasonable six-month period.  The Court should dismiss Mr. Bokole's petition for lack of

subject-matter jurisdiction.

### III.      Recommendation

For the reasons stated above, I recommend that Respondents' Motion to Dismiss Petition

for Writ of Habeas Corpus for Lack of Jurisdiction (Doc. 11) be GRANTED and this case be

DISMISSED without prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge